## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Sharon Schmid** | : | **JURY TRIAL DEMANDED** |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **Borton-Lawson Engineering, Inc.** | : | **No.: 3:CV-05-1660** |
| **Defendant** | : | |

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND ADD ADDITIONAL PARTIES

<u>Introduction:</u>

Pending before the Court is Plaintiff's Motion to Amend and Add Additional Parties. Defendant Borton-Lawson Engineering, Inc. ('BLE') has filed a Brief in Opposition to Plaintiff's Motion.

Plaintiff's Motion seeks to add several defendants and claims. The Motion was sparked by the discovery of an e-mail documenting a shocking breach of confidentiality on the part of proposed defendant Beth Ann Delany ('Delany'), a social worker who provided counseling to plaintiff and who, unbeknownst to plaintiff, acted as an advisor to BLE. <u>See</u> Exhibit "A" (the Delany e-mail). The

Delany e-mail informed BLE that plaintiff was considering legal action against

BLE.  The day after the e-mail was received by BLE, plaintiff was fired.

Plaintiff hereby responds to issues raised by Defendant's Brief in Opposition.

As a preliminary matter, plaintiff notes that Defendant's Brief in Opposition,

although it asks that plaintiff's Motion be denied "in toto" does not oppose plaintiff's

proposed addition of Delany and Corporate Counseling and Training Services

("CCTS") as defendants.

**First Question Presented:      Should Plaintiff's Motion to Amend be rejected due to Statute of Limitations and Exhaustion of Administrative Remedies Issues?**

**Suggested Answer:            No.**

A.      <u>Statute of Limitations Issues:</u>

In its brief, BLE notes that the applicable Statute of Limitations has run for

some of the claims that plaintiff seeks to add.  In addition, BLE notes that some of

the claims plaintiff wishes to add have administrative remedies which have not

been exhausted.

The reason that these claims have not been brought earlier is the same reason

that plaintiff did not raise them at the PHRC/EEOC level.  Plaintiff did not know

that these claims existed until BLE produced the Delany e-mail on or about March

30, 2006 -  after the Statutes of Limitation had run and the PHRC/EEOC

proceeding was closed.  See Oschal Affidavit, (Exhibit A to Defendant's Brief in

Opposition to Plaintiff's Motion to Amend).

Where a plaintiff is, through no fault of her own, unable to discover an

unlawful employment practice until the limitations period has run, the discovery

rule postpones the running of any limitation statutes.  The Third Circuit has

recognized the applicability of the discovery rule in employment discrimination

actions:

> [T]here will also be occasions when an aggrieved person does not
> discover the occurrence of the alleged unlawful employment practice
> until some time after it occurred. The discovery rule functions in this
> latter scenario to postpone the beginning of the statutory limitations
> period from the date when the alleged unlawful employment practice
> occurred, to the date when the plaintiff actually discovered he or she
> had been injured.

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 3rd cir 1994 citing

Cada v. Baxter Healthcare Corp., 920 F.2d 466 (7th. Cir. 1990).

The principles of equitable tolling also apply.  Equitable tolling is

applicable:

> 1) where the defendant has actively misled the plaintiff respecting the
> plaintiff's cause of action; (2) where the plaintiff in some
> extraordinary way has been prevented from asserting his or her rights,

or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).

The second of these descriptions, whereby plaintiff is in "some extraordinary way been prevented from asserting . . . her rights", applies to this case.   It is only through this extraordinary factual scenario that plaintiff was unaware prior to the disclosure of the Delany e-mail that an ADA retaliation claim existed.

In addition, BLE is equitably estopped from raising the statute of limitations under these circumstances.  Equitable estoppel applies to cases where "the defendant has committed fraud or concealment that "causes the plaintiff to relax his vigilance or deviate from his right of inquiry so that the suit is not timely filed." Howard v. Mendez, 304 F. Supp. 2d 632 at 635 (MDPA 2004), quoting Molineux v. Reed, 532 A.2d 792, 794 (PA 1987) (internal quotations omitted). That fraud or concealment "need not be fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient." Id. at 635, quoting Molineux (internal quotations omitted).

BLE told plaintiff that she was being terminated for "[r]efusal to follow supervisor's direction and refusal to follow company policy." See Exhibit "B"

(Termination of Employment Checklist).  No mention was made of the Delany e-mail, nor of any communication with Delany/CCTS.  The Delany e-mail was in the possession of defendant during the PHRC/EEOC action, and clearly fell within the PHRC Data and Document Request that the PHRC issued to defendant.  Said Data and Document Request directed BLE, *inter alia*:

> 6.  Provide copies of all documents in respondent's possession which pertain to the alleged disability, including but not limited to:
>
>> a.  all documents provided by the complainant's physician and/or health care provider(s) . . .
>>
>> e.  all information and material not already provided pertaining to the complainant's medical history and/or health status known to the respondent

<u>See</u> Exhibit "C", page 1 (PHRC Data and Document Request).  Even if BLE did not consider the e-mail to be responsive to (a) above, any records or communications regarding plaintiff's treatment with Delany/CCTS, including the Delany e-mail, would be encompassed by (e).

B.   <u>Administrative Exhaustion/Relation Back Issues</u>

Had the e-mail been properly disclosed by defendant during the PHRC/EEOC proceeding, plaintiff would have amended to add the retaliation claim, and the PHRC could have effectively investigated the retaliation issue.

The retaliation charge is fairly within the scope of the charges brought at the PHRC/EEOC and therefore that it is unnecessary for this charge to be brought before the PHRC/EEOC at this point.  In fact, even though plaintiff did not specifically allege retaliation at the PHRC/EEOC level, the PHRC had plaintiff complete a Retaliation Questionnaire.  See Exhibit 'D'.  Clearly, the PHRC took it upon itself to conduct at least a preliminary investigation regarding retaliation.

The proposed individual defendants were all present at the October 28, 2003 meeting where the decision was made to terminate plaintiff (See Exhibit 'E', Deposition of Mary Ellen Petcavage, page 54.)  In fact, BLE and the prospective individual defendants *expected* plaintiff to bring legal action after her termination. In an e-mail dated October 31, 2003, a BLE employee asked Petcavage if he should refrain from providing plaintiff with "a recommendation of strong performance with the chance of litigation", and warns Petcavage to "advise others". See Exhibit H (Chance of Litigation E-mail).

BLE's claims of prejudice and unfair surprise, in addition to being precluded by the equitable considerations in this case, fail to meet the required standard.

> [T]he non-moving party must do more than merely claim prejudice;
> "it must show that it was unfairly disadvantaged or deprived of the

> opportunity to present facts or evidence which it would have offered
> had the . . . amendments been timely."

Bechtel v. Robinson, 886 F.2d 644 (1989).  BLE has not shown that it will be in

any way disadvantaged if amendment is permitted.  As stated above, BLE and the

proposed individual defendants suspected the plaintiff would sue them, and the

individual defendants have been aware of this legal proceeding since the PHRC

complaint was filed.

The same equitable considerations require that the new claims brought

against BLE and the individual defendants relate back to the original filing of the

Complaint.  The new claims against BLE and the individual defendants arise from

the same events as those brought in the original Complaint.  In addition, they all

knew or should have known that their actions would subject them to legal liability.

**Second Question Presented:**   **Are the amendments proposed by plaintiff futile
as a matter of law?**

**Suggested Answer:**              **No.**

BLE argues that amendment of the complaint will be futile as to three of the

proposed claims.  In determining whether a proposed claim is futile:

> "[T]he proposed amended pleading must be viewed in the light most
> favorable to the pleader; it should not be rejected unless it appears *to a
> certainty* that the pleader would not be entitled to any relief under it.

7

Michener v. Lower Providence Township, 1989 U.S. Dist. LEXIS 5364 quoting

Cooper v. American Employers' Insurance Co., 296 F.2d 303, 307 (6th Cir.

1961).(emphasis added).  BLE cannot meet this standard with regard to any of the

proposed claims.

 A. Individual Liability for Retaliation.

 Plaintiff's proposed Amended Complaint seeks to bring a claim for

retaliation against BLE as well as the individual proposed defendants.  Contrary to

BLE's assertions, employees may be liable for retaliation under the ADA.  Section

503(a) of the ADA states:

> No *person* shall discriminate against any individual because such
> individual has opposed any act or practice made unlawful by this
> chapter or because such individual made a charge, testified, assisted,
> or participated in any manner in an investigation, proceeding, or
> hearing under this chapter.

42 U.S.C. § 12203(a) (emphasis added). The EEOC Compliance Manual states

plainly that individual employees may be held liable for retaliation under the ADA.

> A charging party can bring an ADA retaliation claim against an
> individual supervisor, as well as an employer.  This is because Section
> 503(a) of the ADA makes it unlawful for a "person" to retaliate against
> an individual for engaging in protected activity.

8

EEOC  Compliance Manual, Section 8, p 8-3, citing  Ostrach v. Regents of the Univ. of California, 957 F. Supp. 196 (E.D. Ca. 1997).

The issue of whether 503(a) imposes liability upon individual defendants including supervisors has not been directly addressed by the Third Circuit Court of Appeals.  Of the cases that BLE cites to support its position, only one, Douris v. Schweiker, 229 F.Supp. 2d 391 (E.D. Pa. 2002) deals specifically with Section 503(a).  In that decision Judge Vanaskie bases his rejection of individual liability on two factors.  The first is the Third Circuit holding in Sheriden v. E.I. DuPont d Nemours & Co., 100 F.3d 1061(3rd. Cir. 1996) that Congress did not intend to hold individual employees liable under Title VII. This holding is erroneous because Section 305(a) falls within Title V of the ADA, and not Title VII.

The second basis for Judge Vanaskie's holding is a statement that "the consensus view among district courts in this circuit is that individual liability cannot be imposed under the ADA." Douris at 397, quoting Douris v. County of Bucks, 2001 U.S. Dist. LEXIS 9282.  In support, Judge Vaneski cites a string of district court cases–none of which deal with Section 503(a).

Even if Borton, Lawson and Fisher are not liable individually for retaliation by virtue of their employment with BLE, Petcavage is.  She was not an employee

of BLE at the time of these events.  See Exhibit E,  Deposition of Mary Ellen

Petcavage  p. 12.  Plaintiff erroneously states in the original Complaint and the

proposed Amended Complaint that Petcavage was an employee of BLE and will

revise the Amended Complaint accordingly.

B.        'Protected activity' under the ADA

First, BLE argues that because Delany's e-mail referenced "hostile

environment", it cannot have been in reference to ADA violations because a "claim

for working in a hostile environment is a separate and distinct claim from the

ADA." See Defendant's Brief in Opposition at p. 7.

BLE's legal analysis may be correct, but it only has relevance if plaintiff

and/or Delany knew the legal implications of using the term "hostile environment."

There is no evidence to suggest this to be the case.  The more likely explanation for

their use of that term is reflected in the EEOC Compliance Guidelines:

> Because individuals often may not know the specific requirements of
> the anti-discrimination laws enforced by the EEOC, they may make
> broad or ambiguous complaints of unfair treatment.  Such a protest is
> protected opposition if the complaint would reasonably have been
> interpreted as opposition to employment discrimination.

See Exhibit "F", (EEOC Compliance Guidelines, Section 8) p. 8-4 to 8-5.

Plaintiff told Delany that she was considering legal action regarding BLE's

10

failure to accommodate her disability. See Exhibit 'G,' Declaration of Sharon McDonnell (formerly Sharon Schmid).   Immediately preceeding the Delany e-mail, plaintiff's disability and its impact on her timeliness at work was the main source of friction between plaintiff and Fisher.  An October 27, 2003 e-mail from Fisher to Petcavage discusses plaintiff's tardiness.  See Exhibit 'H', (Fisher-Petcavage e-mail.)  An e-mail dated October 23, 2003 from Fisher to plaintiff relates Fisher's "disappointment with [plaintiff's] tardiness" and states that "this will be my final discussion with you regarding your attendance.  You must now decide if you would like to continue working here." See Exhibit 'I' (Fisher-Schmid e-mail). In addition, Plaintiff's contention that she discussed her ADA-related concerns with Delany immediately prior to the Delany e-mail is <u>entirely consistent with the allegations made by Plaintiff in this suit before the Delany e-mail was disclosed.</u>

Second, BLE argues that because the information came to BLE through Delany, it is not "protected activity." To the contrary, EEOC guidelines state:

> A complaint or protest about alleged employment discrimination to a manager, union official, co-worker, company EEOC official, attorney, newspaper reporter, Congressperson, *or anyone else* constitutes opposition.

See Exhibit 'F' (EEOC Compliance Guidelines, Section 8) p. 8-4 (emphasis added).

In support of its contention, BLE cites <u>Ackel v. National  Communications,</u> <u>Inc.,</u> 339 F.3d 376 (5th Cir. 2003).  However, <u>Ackel</u> is distinguishable.  The <u>Ackel</u> court's holding hinged on its finding that the counselor "was acting on her own initiative rather than at [defendant]'s direction". <u>Id.</u> at 385.

The existing evidence strongly suggests that Delany was not a disinterested third party acting on her own initiative.  Rather, there is evidence that Delany was (unbeknownst to plaintiff) intimately involved in the management of BLE.  In her deposition, Petcavage stated:

> You know, Beth Ann (Delany)'s function is to develop the organization, help managers manage their people and help people be, you know, productive and good at their jobs.

<u>See</u> Ex. "E", Deposition of Mary Ellen Petcavage,  p. 44.

This relationship between Delany/CCTS and BLE, and the clear conflict of interest that it evinces, suggests that BLE may have played a role in encouraging, rewarding, or soliciting Delany's breach of confidentiality.

Even if the communication between Plaintiff and Delany was not primary protected activity, BLE and the individual prospective defendants *perceived* plaintiff to be engaged in protected activity once they learned of her plan to bring a lawsuit.  The Third Circuit has recognized this "perception theory."

> The laws . . . focus on the employer's subjective reasons for taking adverse action against an employee, so it matters not whether the reasons behind the employer's discriminatory animus are actually correct as a factual matter.

Fogleman v. Mercy Hospital, 283 F.3d 561 at 571, (3rd. Cir. 2002).

C.    Intentional Infliction of Emotional Distress

A jury may reasonably find that the conduct of BLE and the proposed individual defendants rises to the level of outrageousness required for finding intentional infliction of emotional distress.  While it is true that such findings are rare in an employment context, the facts of the instant case are exceptional.

Plaintiff suffers from mental illness that at this point cannot be cured, and she has been in treatment for said mental illness for many years, with mixed results.  Her mental illness has a physical dimension, and exacerbation of her depression because of a diminishment in her capacity to trust those who treat her constitutes a physical injury.  It should be noted that the betrayal of plaintiff's trust is still fairly new to her, and may have an even more severe impact as time passes.

D.    Worker's Compensation

Plaintiff's claims are not barred by Worker's Compensation because they were not sustained during course of employment, but after plaintiff's employment was terminated.

13

E.      Implied Covenant of Good Faith and Fair Dealing

A duty of good faith and fair dealing arises from the contract between BLE and CCTS (as a third-party beneficiary) and from BLE's explicit promises to plaintiff and other employees that counseling with CCTS would be confidential.

"Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." Baker v. Lafayette College, 350 Pa. Super. 68 at 84, (1986), quoting  Restatement (Second) of Contracts, § 205.   The contract between BLE and CCTS imposed on the parties a duty to refrain from using the contract for unlawful purposes.  Said duty flowed to plaintiff as a third-party beneficiary.  Plaintiff believes that BLE used that contract and the relationship that it governed to get information that should have been kept confidential, then used that information in an effort to avoid liability for their unlawful acts.

F.      Breach of Contract

BLE made oral and written promises to plaintiff and other employees that her communications to Delany/CCTS would be confidential.  Those promises were related in staff meetings and in posters promoting the EAP program administered by Delany/CCTS.   Plaintiff believes that BLE violated those promises by requesting information from Delany.  At the very least, BLE had a duty to refrain

from using information that had been improperly disclosed, and to refrain from relating that information to other employees of BLE.

G.    Civil Conspiracy

As stated above, Petcavage was not an employee of BLE at the time of Plaintiff's employment.  See Exhibit 'E', Deposition of Mary Ellen Petcavage,  p. 12. Plaintiff erroneously states in the original Complaint and the proposed Amended Complaint that Petcavage was an employee of BLE and will revise the Amended Complaint accordingly.  Accordingly, defendants are not immune from a civil conspiracy claim.

For the aforementioned reasons, plaintiff respectfully requests that this Honorable Court grant plaintiffs Motion to Amend the Complaint and Add Parties.

Dated: August 14, 2006                    /s/ George R. Barron
                                          George R. Barron, Esquire
                                          Counsel for Plaintiff
                                          PA ID. # 88747
                                          88 North Franklin Street
                                          Wilkes Barre, PA 18701
                                          (570) 824-3088