IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

SHARON SCHMID, PLAINTIFF

V.

BORTON LAWSON ENGINEERING, INC., DEFENDANT
No.: 3:CV-05-1660

(JUDGE WILLIAM J. NEALON)

_____

DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

_____

ROSENN, JENKINS & GREENWALD, L.L.P.
James C. Oschal, Esquire
Attorney I.D. No. PA 53846
Thomas J. Campenni, Esquire
Attorney I.D. No. PA 87809
15 South Franklin Street
Wilkes-Barre, PA 18711-0075
(570) 826-5621

Attorneys   for   Defendant,   Borton   Lawson
Engineering, Inc.

510115.2

# TABLE OF CONTENTS

Page No.

I.  FACTUAL BACKGROUND SUMMARY
& PROCEDURAL HISTORY..................................................1

II.   QUESTIONS PRESENTED ..........................................................4

III.   ARGUMENT...............................................................................4

A.  Plaintiff Cannot Establish a *Prima Facie* Case Under The ADA/PHRA. 5

1.   Plaintiff Was Not Disabled Within The Meaning of the ADA and
PHRA.........................................................................................7

a.   Plaintiff's "Difficulty Wakening In The Morning" And "Getting To
Work On Time" Were Not Substantial Limitations On Major Life Activities........... 9

B.  Plaintiff Cannot Meet Her Burden Regarding "Reasonable
Accommodation." ........................................................... 11

1.   Plaintiff Did Not Provide Any Notice of Her Alleged Disability Or
Her Request For An Accommodation, Reasonable or Otherwise................................. 11

2.   A "Reasonable Accommodation" Does Not Require Changing The
Essential Functions Of The Job and Inflicting An Undue Hardship On Borton
Lawson. ........................................................................................ 16

a.   Plaintiff's Scheduled Starting Time Was An Essential Function Of The
Job.........................................................................................16

b.   Plaintiff' Desired Accommodation Was Patently Unreasonable........................ 19

C.  Plaintiff Was Terminated For Legitimate, Nondiscriminatory
Reasons.. ........................................................................... 21

D.  Plaintiff's Fails As A Matter Of Law To Establish A Claim For
Intentional Infliction Of Emotional Distress. ................................. 24

IV.   CONCLUSION ........................................................................ 26

i

510115.2

TABLE OF AUTHORITIES

Page No.

**CASES**

<u>Belverena v. Central Parking System, Inc.</u>, Civil A. No. 05-4364, 2005 WL
    2850343 (E.D. Pa. Oct. 31, 2005) ..................................................................... 26

<u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326 (3d Cir. 1995).................5

<u>Brieck v. Harbison-Walker Refractories</u>, 624 F. Supp. 363
    (W.D. Pa. 1985), <u>aff'd</u> <u>in</u> <u>relevant</u> <u>part</u>, 822 F.2d 52 (3d Cir. 1987) ................. 24

<u>Buskirk v. Apollo Metals</u>, 307 F.3d 160 (3d Cir. 2002)...........................................5

<u>Carr v. Reno</u>, 23 F.3d 525 (D.C. Cir. 1994) ................................................... 17, 20

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986)
………………………………………………………………………………………...5

<u>Conneen v. MBNA Am. Bank, N.A.</u>, 182 F. Supp.2d 370
    (D. Del. 2002)......................................................................................................7

<u>Conneen v. MBNA Am. Bank, N.A.</u>, 334 F.3d 318 (3d Cir. 2003)…………...12-14

<u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390 (3d Cir. 1988) ................................... 24

<u>Deane v. Pocono Med. Ctr.</u>, 142 F.3d (3d Cir. 1998)........................................ 5, 16

<u>Donahue v. Consol. Rail Corp.</u>, 224 F.3d (3d Cir. 2000)....................................... 16

<u>Earl v. Mervyns, Inc.</u>, 207 F.3d 1361 (11th Cir. 2000) ................................... 16, 17

<u>EEOC v. AIC Sec. Investigation</u>, 820 F. Supp. 1060 (N.D. Ill. 1993)................... 18

<u>Fewell v. Besner</u>, 444 Pa. Super. 559, 664 A.2d 577 (1995) ................................ 25

<u>Firemen's Ins. Co. of Newark v. DuFresne</u>, 676 F.2d 965 (3d Cir. 1982)................5

510115.2

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994) ..................................................... 21

Gaul v. Lucent Techs., Inc., 134 F.3d 576 (3d Cir. 1998).........................................5

Hart v. O'Malley, 436 Pa. Super. 151, 647 A.2d 542 (1994), aff'd on other
    grounds, 544 Pa. 315, 676 A.2d 222 (1996)........................................................ 25

Hollestelle v. Metro. Washington Airports Auth., 145 F.3d 1324 (4th Cir. 1998) . 17

Hoy v. Angelone, 720 A.2d 745 (Pa. 1998) ........................................................... 24

Imler v. Hollidaysburg American Legion Ambulance Service,
    731 A.2d 169 (Pa. Super. 1999) ...............................................................................5

Jackson v. Veterans Admin., 22 F.3d 277 (11th Cir. 1994) ................................... 17

Jones v. United Parcel Serv., 214 F.3d 402 (3d Cir. 2000) .............................. 11, 12

Jovanovic v. In-Sink-Erator Division of Emerson Elec. Co.,
    201 F.3d 894 (7th Cir. 2000) .................................................................................. 20

Kelly v. Drexel Univ., 907 F. Supp. 864 (E.D. Pa. 1995),
    aff'd., 94 F.3d 102 (3d Cir. 1996) ...........................................................................5

Kimbro v. Atlantic Richfield Co., 889 F.2d 869 (9th Cir. 1989) ............................ 20

Kotlowski v. Eastman Kodak Co., 922 F. Supp. 790
    (W.D. N.Y. 1996) .................................................................................... 10, 17-18

Law v. United States Postal Serv., 852 F.2d 1278 (Fed. Cir. 1988)...................... 17

Lawrence v. National Westminster Bank, 98 F.3d (3d Cir. 1996) ...........................5

Marinelli v. City of Erie, Pa., 216 F.3d 354 (3d Cir. 2000) .....................................7

Martinez v. Pacificorp, 211 F.3d 1278 (10th Cir. 2000) ..................................... 9, 10

Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933 (3d Cir. 1997) .... 25

Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1 (2d Cir. 1999)................6

510115.2

Parker v. City of Williamsport, 406 F. Supp.2d 534 (M.D. Pa. 2005).....................8

Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298 (3d. Cir. 1995) ......................5

Popko v. Pennsylvania State Univ., 54 F. Supp.2d 589 (M.D. Pa. 2000) ................8

Rhoads v. F.D.I.C., 257 F.3d 373 (4th Cir. 2001), cert. denied,
    35 U.S. 933, 122 S.Ct. 1309, 152 L. Ed. 2d 219 (2002) ........................................5

Rodgers v. Prudential Ins. Co. of America, 803 F. Supp. 1024 (M.D. Pa. 1992),
    aff'd without opinion, 998 F.2d 1004 (3d Cir. 1993).......................................... 26

Sarko v. Penn-Del. Directory Co., 968 F. Supp. 1026 (E.D. Pa. 1997) ................. 10

Sarullo v. United States Postal Service, 352 F.3d 789 (3d Cir. 2003) ............. 21, 23

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507, 112 S.Ct. 2742, 2747,
    125 L. Ed. 2d 407 (1993)................................................................................... 21

Taylor v. Phoenixville Sch. Dist., 184 F.3d 296 (3d Cir. 1999)......... 5, 6, 12, 16, 17

Tice v. Ctr. Area Transp. Auth., 247 F.3d 506 (3d Cir. 2001) ..................................7

Tyndall v. National Educ. Centers, 31 F.3d 209 (4th Cir. 1994)............................. 17

Van Stan v. Fancy Colours & Co., 125 F.3d 563 (7th Cir. 1997) ........................... 15

Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661
(3d Cir. 1999)................................................................................................... 6, 7

RULES

29 C.F.R. § 1630.2(a)(2)(ii) .................................................................................. 16

29 C.F.R. § 1630.2(i)…………………………………………………………………………….8

29 C.F.R. § 1630.2(j)(1)(i)(ii)...................................................................................7

29 C.F.R. § 1630.2(n)(1)........................................................................................ 17

510115.2

29 C.F.R. § 1630.2(n)(2)(ii) ....................................................................................... 17

29 C.F.R. App. § 1630.2(i) (1999) ...............................................................................8

29 C.F.R. Pt. 1630, App. § 1630.9……………………………………………………..12

**STATUTES**

42 U.S.C. § 12102(2) ...................................................................................................7

42 U.S.C. § 12111(8) ............................................................................................ 7, 17

42 U.S.C. § 121112(b)(5)(A) .......................................................................................6

510115.2

I.   **FACTUAL BACKGROUND SUMMARY & PROCEDURAL HISTORY** [1]

Plaintiff began working as a Marketing Assistant at Borton Lawson on May 14, 2001.   (Compl. ¶ 10; Def.'s Stmt of Undisp. Mat. Facts at ¶ 2; Pl. Dep. at 90.) From May 14, 2001 through early February of 2003, Plaintiff was supervised, without incident, by Kevin Johnson.  (Pl. Dep. at 78, 100.)  On February 19, 2003, however, Melissa Fisher ("Ms. Fisher") took over as Plaintiff's supervisor.  (Stmt. of Undisp. Mat. Facts at ¶ 11.)  Conflicts between Plaintiff and Ms. Fisher began to arise almost immediately after Ms. Fisher took over as Plaintiff's supervisor.  For example, approximately one week after Ms. Fisher took over as Plaintiff's supervisor, Plaintiff took issue with Ms. Fisher's decision to change the dress code for the Marketing Department by prohibiting her employees from wearing jeans. (Pl. Dep. at 170-172.)  From that point on, the relationship between Plaintiff and Ms. Fisher spiraled downward to an irreconcilable situation.

On April 28, 2003, Plaintiff received a Counseling Memorandum from Ms. Fisher, which advised Plaintiff, inter alia, that she needed better time management, was too confrontational and would continually work overtime without authorization.  (Stmt. of Undisp. Mat. Facts at ¶¶ 87-88, 94-97.)  On October 7, 2003, Plaintiff received a Performance Evaluation from Ms. Fisher, in which

---

[1] Borton Lawson incorporates by reference its Statement of Undisputed Material Facts submitted on September 11, 2006.

Plaintiff received the lowest grade possible in ten (10) different performance areas. (Stmt. of Undisp. Mat. Facts at ¶ 91.)

Rather than heed the warnings from Ms. Fisher regarding her deficient performance, Plaintiff's attitude and performance proceeded to get worse. (Stmt. of Undisp. Mat. Fact at ¶ 100.)   For example, Plaintiff would repeatedly go outside of Ms. Fisher's authority and ask other persons to make decisions on Ms. Fisher's behalf when she did not agree with what Ms. Fisher decided, including asking other Managers to authorize overtime when Ms. Fisher would not authorize it, even though her repeated working unauthorized overtime put a serious strain on the Marketing Department's budget.  (Stmt. of Undisp. Mat. Facts at ¶¶ 86, 93.) Despite being warned otherwise, Plaintiff would work unauthorized overtime approximately once a week, including as recent as a week before she was fired. (Stmt. of Undisp. Mat Facts at ¶ 87.)

On October 23, 2003, Ms. Fisher sent an e-mail to Plaintiff advising her that it was her final warning regarding her performance.  (Stmt. of Undisp. Mat. Facts at ¶¶ 60, 62-63 & 101.)  In spite of Ms. Fisher's warning, Plaintiff's disrespectful attitude and conduct escalated following the e-mail to the point that Plaintiff was not saying nice things about Ms. Fisher to other employees, would not talk to Ms. Fisher even though they shared the same office, would be absent from her desk for long periods of time, and would be disrespectful in general.  (Stmt. of Undisp. Mat.

510115.2

Facts at ¶ 102.)  Therefore, as a result of Plaintiff's repeated refusal to change her attitude and to engage in a course of conduct detrimental to Borton Lawson and to Ms. Fisher's health, Ms. Fisher determined that "she had enough" and decided to terminate Plaintiff on October 28, 2003.  (Stmt. of Undisp. Mat. Facts at ¶ 2, 103 & 110.)

On August 15, 2005, Plaintiff filed the instant Complaint against Borton Lawson alleging that she was fired because of her alleged disability, Major Depression and Dysthymic Disorder, which caused her difficulty to wake up in the morning and get to work on time.  (Compl. at ¶¶ 16, 19, 20, & 24.)   However, Plaintiff had not even been diagnosed with Major Depression and Dysthymic Disorder until _after_ she was terminated from Borton Lawson in October of 2003. (Stmt. of Undisp. Mat. Facts at ¶¶ 4-10.)  Moreover, Plaintiff was not terminated solely because of her repeated tardiness in getting to work on time in the morning. (Stmt of Undisp. Mat. Facts at ¶ 106.)

On October 24, 2005, Borton Lawson filed its Answer to Plaintiff's Complaint.  On July 17, 2006, Plaintiff filed a Motion to Amend the Complaint and Add Additional Parties, as well as her supporting brief.  On August 1, 2006, Borton Lawson filed its Brief in Opposition.  On August 4, 2006, discovery was completed.  On August 14, 2006, Plaintiff filed her Reply Brief in Support of her

510115.2

Motion to Amend, which is still pending.  On September 11, 2006, Borton Lawson

filed its Motion for Summary Judgment.  This Brief is in Support of that Motion.

## II.   <u>QUESTIONS PRESENTED</u>

    A.    Is Plaintiff disabled for the purposes of the ADA and the PHRA?

    B.    Has Plaintiff met her burden regarding reasonable accommodation and the interactive process?

    C.    Even assuming *arguendo* that Plaintiff can establish a *prima facie* case, was Plaintiff terminated for legitimate, nondiscriminatory reasons?

    D.    Can Plaintiff recover for intentional infliction of emotional distress resulting from her termination from employment?

## III.   <u>ARGUMENT</u>

In cases in which the non-moving party will bear the burden of persuasion at

trial, the moving party may prevail on summary judgment by showing that the

evidence which will be offered by the non-moving party is insufficient to carry that

burden.  <u>Lawrence v. National Westminster Bank</u>, 98 F.3d 61, 65 (3d Cir. 1996).

When confronted with such an argument, the non-moving party must "identify

evidence of record sufficient to establish every element essential to its claims."

<u>Petrucelli v. Bohringer and Ratzinger</u>, 46 F.3d 1298, 1308 (3d. Cir. 1995) (internal

citations omitted.)  The type of evidence offered by the non-moving party must be

"'such that a reasonable jury could return a verdict for the non-moving party.'"

<u>Lawrence</u>, 98 F.3d at 65 (internal quotations omitted.)

510115.2

Thus, the non-moving party "may not rely merely upon bare assertions, conclusory allegations, or suspicions." Kelly v. Drexel Univ., 907 F. Supp. 864, 870 (E.D. Pa. 1995), aff'd., 94 F.3d 102 (3d Cir. 1996) (citing Firemen's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982)).   Rather, the non-moving party must point to specific facts in the record "showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986); Kelly, 907 F. Supp. at 870.

### A.  **Plaintiff Cannot Establish a *Prima Facie* Case Under The ADA/PHRA.** [2]

To establish a *prima facie* case under the ADA, Plaintiff must prove that she (1) had a "disability" within the meaning of the law; (2) was a "qualified individual" (otherwise qualified to perform the essential functions of her job, with or without a reasonable accommodation), and (3) has suffered an adverse employment action as a result of discrimination.[3] See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999); Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998); Gaul v. Lucent Techs., Inc., 134 F.3d 576, 579 (3d Cir. 1998).

---

[2] Under Pennsylvania law, the PHRA generally is applied in accordance with the ADA.  See Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (The PHRA and the ADA are "'basically the same --- in relevant respects and 'Pennsylvania courts --- generally interpret the ADA in accord with its federal counterparts.'"); Imler v. Hollidaysburg American Legion Ambulance Service, 731 A.2d 169, 173 (Pa. Super. 1999) ("The PHRA and ADA are interpreted in a co-extensive manner."). Consequently, Borton Lawson's analysis of Plaintiff's ADA claim applies with equal force to Plaintiff's PHRA claim.
[3] Discrimination under the ADA includes failing to make "reasonable accommodations" for an individual's disability.  See Taylor, 184 F.3d at 306.

510115.2

An employer discriminates against a "qualified individual" with a disability when the employer fails to reasonably accommodate the known physical or mental limitations of the individual, unless the employer can show such accommodations are unreasonable or would impose an undue hardship on the operation of the employer's business.  See 42 U.S.C. § 121112(b)(5)(A); Taylor, 184 F.3d at 306; Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 670 (3d Cir. 1999).

The essence of Plaintiff's disability discrimination claims is that Borton Lawson did not provide "reasonable accommodation" for an alleged disability in violation of the ADA and the PHRA.  (Compl. at ¶¶ 34-36, 42-44.)  To establish a prima facie case of failure to accommodate under the ADA, an employee must prove:  (1) she is "disabled" as that term is defined by the ADA; (2) her employer had notice of her alleged disability; (3) she can perform the essential functions of her position with accommodation by the employer; and (4) the employer failed to accommodate her.  See Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001), cert. denied, 535 U.S. 933, 122 S.Ct. 1309, 152 L. Ed. 2d 219 (2002); Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999); Conneen v. MBNA Am. Bank, N.A., 182 F. Supp.2d 370, 376-77 (D. Del. 2002) (same), aff'd, 334 F.3d 318 (3d Cir. 2003).

510115.2

In a "reasonable accommodation" case, the plaintiff bears the burden of proving that she is a "qualified individual" with a "disability."  <u>See</u> <u>Walton</u>, 168 F.3d at 670.   The plaintiff bears the burden of persuasion that an effective accommodation exists, to render his/her otherwise qualified, the costs of which do not exceed the benefits.  <u>Id.</u>   These two requirements placed on a plaintiff permit courts to grant summary judgment to a defendant where the defendant can demonstrate that the plaintiff's proposed accommodation is clearly ineffective or too costly.  <u>Id.</u>

### 1.    Plaintiff Was Not Disabled Within The Meaning Of The ADA And PHRA.

A qualified individual with a "disability" is an individual with a disability who, with or without "reasonable accommodation," can perform the essential functions of the job.  42 U.S.C. § 12111(8); <u>Tice v. Ctr. Area Transp. Auth.</u>, 247 F.3d 506, 512 (3d Cir. 2001).  A disability is defined as (1) a physical or mental impairment that substantially limits[4] one or more major life activities of a person; (2) a record of such impairment; and (3) being regarded as having such an impairment.  42 U.S.C. § 12102(2); <u>Tice</u>, 247 F.3d at 512.   The ADA does not define major life activity, but the Equal Employment Opportunity Commission's

---

[4] There term "substantially limits" means:  (1) "unable to perform a major life activity that the average person in the general population can perform, or significantly restricted as to the condition, manner, or" (2) "duration under which the average person in the general population can perform that same major life activity."  <u>See</u> 29 C.F.R. § 1630.2(j)(1)(i)(ii); <u>Marinelli v. City of Erie, Pa.</u>, 216 F.3d 354, 361 (3d Cir. 2000).

510115.2

("EEOC") interpretive guidance indicates that "major life activities" "are those basic activities that the average person in the general population can perform with little or no difficulty." See 29 C.F.R. App. § 1630.2(i) (1999). Operating from this premise, the actual regulations list "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" as example of major life activities. See 29 C.F.R. § 1630.2(i). Sleeping has also been recognized as a major life activity. Parker v. City of Williamsport, 406 F. Supp.2d 534, 544 n. 10 (M.D. Pa. 2005) (McClure, J.); Popko v. Pennsylvania State Univ., 54 F. Supp.2d 589, 593 (M.D. Pa. 2000) (Caputo, J.).

Contrary to the allegations in her Complaint, Plaintiff admitted in her deposition that she never told anyone at Borton Lawson that she had a "disability" or that she was diagnosed with a disability or that she had Major Depression or Dysthymic Disorder (Stmt. of Undisp. Mat. Facts at ¶¶ 12-14, Pl. Dep. at 147-48, 150). Similarly, it is undisputed that Plaintiff never provided any medical or other documentation to anybody at Borton Lawson concerning her alleged depression or Dysthymic Disorder or any other alleged disability. (Stmt. of Mat. Undisp. Facts at ¶ 15, Pl. Dep. at 105.) To the contrary, Plaintiff conceded during her deposition that she had not been diagnosed with Major Depression or Dysthymic Disorder (her alleged disabilities, see Compl. at ¶ 20) until after she was terminated from Borton Lawson in October of 2003. (Stmt. of Undisp. Mat. Facts at ¶¶ 4-10.)

510115.2

Plaintiff ostensibly argues that she told representatives from Borton Lawson that she was depressed or going through "a depression."  (Pl. Dep. at 136-37.)  This was not unusual, since it was well-known at Borton Lawson that Plaintiff was experiencing martial difficulties (they ultimately divorced) while she was employed at the Company.  (Stmt. of Undisp. Mat. Facts at ¶¶ 111-12; Pl. Dep. at 10.)   Being "depressed" under the circumstances does not equal a disability cognizable under the ADA and PHRA because it did not substantially limit a major life activity.

> **a.   Plaintiff's "Difficulty Wakening In The Morning" And "Getting To Work On Time" Were Not Substantial Limitations On Major Life Activities.**

Plaintiff testified that her alleged disability does not affect her ability to sleep, work, speak, breathe, walk, or even care for herself.  (Stmt. of Undisp. Mat. Facts at ¶¶ 24-32.)  The only reference in the record as to how her "depression" substantially limits one of her major life activities is with regard to her ability to get up in the morning and getting to work on time.  (Compl. at ¶ 19.)  However, Plaintiff's alleged difficulty waking up in the morning and getting to work on time are <u>not</u> major life activities recognized by the courts interpreting the ADA.

This exact issue was squarely addressed by the Tenth Circuit in <u>Martinez v. Pacificorp</u>, 211 F.3d 1278 (10th Cir. 2000) (table) (A copy of the <u>Martinez</u> decision is attached hereto as Exhibit "A.")  In <u>Martinez</u>, the plaintiff contended that her

510115.2

alleged disability of chronic fatigue syndrome ("CFS") inhibited her ability to perform the major life activity of "sleeping and getting up in the morning."  The plaintiff claimed that she had insomnia and resulting fatigue which made it difficult for to "get going in the morning."  The plaintiff argued that with the accommodation of flextime he could perform the essential functions of her job and that a punctual arrival was not an essential function of her job.

The Tenth Circuit in <u>Martinez</u> found that (assuming without deciding that CFS is an impairment that substantially limits a major life activity of sleeping) the plaintiff still had to show that the CFS significantly restricted her ability to sleep as compared to the average person in the general population.  The court further found that even adopting the plaintiff's contention that punctuality was not an essential function of her job, she failed to establish a *prima facie* case.  In affirming summary judgment for the employer, the Tenth Circuit held that the plaintiff was not disabled because "getting up and moving in the morning" is not a major life activity.  <u>Id.</u>; <u>See</u> <u>also</u> <u>Sarko v. Penn-Del. Directory Co.</u>, 968 F. Supp. 1026, 1035 n. 8 (E.D. Pa. 1997) (finding no support for Plaintiff's argument that "the ability to get a sound night's sleep and to report to work on time, clear-minded, in the morning" was a major life activity), <u>aff'd</u>, 189 F.3d 464 (3d Cir. 1999); <u>Kotlowski v. Eastman Kodak Co.</u>, 922 F. Supp. 790, 797-98 (W.D. N.Y. 1996) (same).

Based on the foregoing, Plaintiff's argument that her "depression" substantially limited her major life activity of "awakening in the morning" and "difficulty arriving to work on time" fails as a matter of law. Since "getting up and moving in the morning" is not a major life activity, Plaintiff cannot establish, as a matter of law, that she had an impairment that substantially limited a major life activity. Clearly, Plaintiff is not disabled under the law.

### B. Plaintiff Cannot Meet Her Burden Regarding "Reasonable Accommodation."

It is unnecessary to address the issue of "reasonable accommodation" because the record shows that Plaintiff was not disabled as a matter of law. However, even assuming *arguendo* that Plaintiff was somehow "disabled," Borton Lawson was not notified or otherwise aware of her alleged disability or her alleged desire for an accommodation. Accordingly, summary judgment should be granted in favor of Borton Lawson.

### 1. Plaintiff Did Not Provide Any Notice Of Her Alleged Disability Or Her Request For An Accommodation, Reasonable or Otherwise.

To have an obligation to reasonably accommodate a disability, the employer must <u>know</u> of both the disability and the employee's desire for an accommodation of the disability. <u>See</u> <u>Jones v. United Parcel Serv.</u>, 214 F.3d 402, 408 (3d Cir. 2000). The EEOC's interpretive guidelines provide that "[o]nce a qualified individual with a disability has requested a reasonable accommodation, the

employer must make the reasonable effort to determine the appropriate accommodation."  29 C.F.R. Pt. 1630, App. § 1630.9 at 361; <u>Jones</u>, 214 F.3d at 407.  The notice by the employee must make it clear that the employee wants assistance for his or her disability.  <u>Jones</u>, 214 F.3d at 408 (citing <u>Taylor</u>, 184 F.3d at 313).  In the instant case, Plaintiff did not and could not tell Borton Lawson that she had been diagnosed with Major Depression and Dysthymic Disorder because she was not diagnosed with those alleged impairments until <u>after</u> she was terminated.  (Stmt. of Undisp. Mat. Facts at ¶¶ 4-12.)  Plaintiff admits that she never told Borton Lawson that she was disabled or even used the term diagnosed. (Stmt. of Undisp. Mat. Facts at ¶¶ 12-14, Pl. Dep. at 147-48, 150.)  Therefore, if there was any breakdown in the interactive process, it was solely the result of Plaintiff's conduct.[5]

A similar issue was addressed by the Third Circuit in <u>Conneen v. MBNA America Bank, N.A.</u>, 334 F.3d 318 (3d Cir. 2003).  In <u>Conneen</u>, the plaintiff ("Conneen") filed suit against her former employer ("MBNA"), alleging violations of the ADA based on her claim that MBNA failed to accommodate her disability. Specifically, Conneen claimed that MBNA's withdrawal of the accommodation of allowing her to start work an hour later was unreasonable.  She argued that the

---

[5] The record is that clear that, consistent with its policy regarding the ADA, once Borton Lawson was provided notice of an employee's disability, it was Borton Lawson's practice to provide employees with documentation to be completed by the employee's physician and, upon receipt of the completed documentation, provide a reasonable accommodation for that employee.  (Stmt. of Undisp. Mat. Facts at ¶¶ 18-22.)

510115.2

continuing effects of her medication made it difficult for her to consistently report for work at 8:00 a.m. and insisted that she could have performed the essential functions of her job had MBNA continued to allow her to report to work at 9:00 a.m.   MBNA, <u>inter</u> <u>alia</u>, argued that it had no reason to believe that the accommodation it initially provided was still necessary and that Conneen had no other than herself to blame for that.   The Third Circuit stated:

> Although an employer is liable for discriminating against an employee in need of accommodation based upon the employee's known disability, neither the law nor common sense can demand clairvoyance of an employer in MBNA's position.

<u>Id.</u> at 331 (internal citations omitted.)  In support of its decision to affirm summary judgment in MBNA's favor, the Third Circuit further noted:

> Despite MBNA's prior knowledge of Conneen's morning sedation, the interactive process requires an employee in her position to do something more than proffer excuses of heavy traffic, giving a parent a ride, or cleaning up after a pet when asked to explain tardiness.   This is especially true given the repeated warnings MBNA had given Conneen.
>
> *          *          *          *
>
> After being given repeated chances and offering repeated assurances of punctuality, Conneen was on time for nearly a month before she was finally terminated. MBNA cannot be held liable for failing to read Conneen's tea leaves.   Conneen had an obligation to truthfully communicate any need for accommodation, or to have her doctor do so on her behalf if she was too

510115.2

embarrassed to respond to MBNA's many inquiries into
any reason she may have had for continuing to be late.

Id. at 332-333 (internal citations omitted.)

In this case, Plaintiff admitted that she never told anyone from Borton
Lawson that she had been diagnosed with Major Depression and Dysthymic
Disorder, never used the term diagnosed and never told anyone that she had a
"disability." (Compl. at ¶¶ 24-25, Stmt. of Undisp. Mat. Facts at ¶ 12, 13; Pl. Dep.
at 147-48, 150.)   Similarly, it is undisputed that Plaintiff never provided any
medical or other documentation to anybody at Borton Lawson concerning her
alleged depression or Dysthymic Disorder or any alleged disability. (Stmt. of Mat.
Undisp. Facts at ¶ 15, Pl. Dep. at 105.)

It is undisputed that the only reason that Plaintiff ever provided to Borton
Lawson for being late to work was that she was tired, exhausted, or she could not
get up in the morning. (Stmt. of Undisp. Mat. Facts at ¶¶ 57, 69-70.)   Instead of
telling Borton Lawson that she had "disability" which prevented her from getting
to work by her 8:00 a.m. starting time, Plaintiff told Borton Lawson that if she
needed to be at work by 8:00 a.m., then she would "certainly come in at 8:00 a.m.
consistently." (Stmt. of Undisp. Mat Facts at ¶¶ 41, 43.)   Even when Ms. Fisher,
on her volition, moved Plaintiff's start time from 8:00 a.m. to 8:15 a.m. to improve

14

on her tardiness,[6] Plaintiff continued to arrive late, never asked if she could come in later than that time, and never articulated that the reason for her tardiness was because of her alleged disability.  (Stmt. of Undisp. Mat. Facts ¶¶ 48, 50, 64 & 66.)  Importantly, none of Plaintiff's doctors ever put a restriction on her that precluded her starting work before a certain time, nor did she ever ask her doctor to write her a note for her employer which would reflect that she needed to work on a flexible schedule.  (Stmt. Undisp. Mat. Facts at ¶¶ 51, 68.)

The record clearly establishes that Plaintiff never gave notice to Borton Lawson that she was suffering from Major Depression and/or Dysthymic Disorder or any other "disability."  (Stmt. of Undisp. Mat. Facts  at ¶ 12.)  Since Borton Lawson did not have knowledge or notice of any alleged "disability," Plaintiff cannot establish a *prima facie* case under the ADA.  <u>See</u> <u>Van Stan v. Fancy Colours & Co.</u>, 125 F.3d 563, 571-72 (7th Cir. 1997) (holding an employer cannot be liable under the ADA for discharging an employee because of the effects of a disability when there was no direct evidence that the decision maker had prior knowledge of the employee's alleged disability).

---

[6] Ms. Fisher, herself, was counseled by her supervisors because of Plaintiff's tardiness, which reflected on her ability to manage.  (Stmt. of Undisp. Mat. Facts at ¶ 72.)

510115.2

2.    A "Reasonable Accommodation" Does Not Require Changing The Essential Functions Of The Job and Inflicting An Undue Hardship On Borton Lawson.[7]

a.    Plaintiff's Scheduled Starting Time Was An Essential Function Of The Job.

An employee claiming that the employer failed to reasonably accommodate a disability can only succeed if the employee can demonstrate that a specific reasonable accommodation would have allowed her to perform the essential functions of her position.  See Donahue v. Consol. Rail Corp., 224 F.3d 226, 232 (3d Cir. 2000) (citing Taylor, 184 F.3d at 319).  Employers are not required to modify the essential functions of a job in order to accommodate an employee.  Id. In Donahue, the Third Circuit explained that the ADA "is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been  made." Id. at 235.

An accommodation is reasonable and required under the ADA only if it allows the employee to perform the essential functions of the job.  See 29 C.F.R. § 1630.2(a)(2)(ii); Deane, 142 F.3d at 140; Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000).  An "essential employment function" is defined as a "fundamental job duty of the employment . . . ."  29 C.F.R. § 1630.2(n)(1).  In

---

[7] To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate:  (1) the employer knew about the employee's disability; (2) the employee requested accommodations of assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.  See Taylor, 184 F.3d at 319-20.

16

determining whether a job duty is an essential function of an employment, "consideration shall be given to the employer's judgment as to what functions of a job are essential . . . ." 42 U.S.C. § 12111(8). As in this case, a job function may be essential if there are a limited number of employees among whom performance of the job can be distributed. See 29 C.F.R. § 1630.2(n)(2)(ii).

Courts addressing this issue have repeatedly held that employees who are disabled cannot prove that they can adequately perform the essential functions of a job without showing that they can maintain a regular and dependable level of attendance at that job. See e.g., Earl, 207 F.3d at 1366-67 (finding punctuality was an essential function of the job); Jackson v. Veterans Admin., 22 F.3d 277, 278-79 (11th Cir. 1994) (employee with numerous sporadic absences not "otherwise qualified"); Tyndall v. National Educ. Centers, 31 F.3d 209, 213 (4th Cir. 1994) ("[A]n employee must be willing and able to demonstrate . . . skills [necessary to perform the job at issue] by coming to work on a regular basis); Carr v. Reno, 23 F.3d 525, 529 (D.C. Cir. 1994) ("essential function of any . . . job is an ability to appear for work"); Hollestelle v. Metro. Washington Airports Auth., 145 F.3d 1324 (4th Cir. 1998) (table) (finding employee unable to perform the essential function of arriving to work on time); Law v. United States Postal Serv., 852 F.2d 1278, 1279-80 (Fed. Cir. 1988) ("an agency is inherently entitled to require an employee to be present during scheduled work times"); Kotlowski, 922 F. Supp. at

798 (holding inability to get to work on time made plaintiff unqualified to perform the functions of her job); <u>EEOC v. AIC Sec. Investigation</u>, 820 F. Supp. 1060, 1064 (N.D. Ill. 1993) ( "attendance is necessary to any job . . . .").

In this case, it is undisputed that attendance at work during core business hours was an essential function of Plaintiff's job as a Marketing Coordinator.  The mandatory or core hours for the Marketing Department were from 8:00 a.m. to 4:30 p.m.  (Stmt. of Undisp. Mat. Facts at ¶ 36.)  Significantly, there were only two employees in the Marketing Department, Plaintiff and Ms. Fisher.  (Stmt. of Undisp. Mat. Facts at ¶ 37.)  It was vitally important for Plaintiff to be present during the core hours of the business day because one of the Marketing Department's most important duties was to interact with clients and vendors and to be present whenever the staff engineers needed support.[8]  (Stmt. of Undisp. Mat. Facts at ¶ 73.)  Moreover, if Ms. Fisher was away or not present at work during the core hours, Plaintiff would be required to run the office, which she could not do if she was allowed to have an open-ended schedule.  (Stmt. of Undisp. Mat. Facts at ¶ 35, 39.)   Also, Ms. Fisher explicitly told Plaintiff that attendance was a critical requirement of her position.  (Stmt. of Undisp. Mat. Fact at ¶ 63.)

---

[8] For a full description of Plaintiff's duties as a Marketing Coordinator, please see Exhibit 10 to Plaintiff's deposition, attached to Defendant's Statement of Undisputed Material Facts as Exhibit "A."

510115.2

Clearly, based on the record, Plaintiff's inability to get to work by 8:00 a.m. and then 8:15 a.m., made her unqualified to perform the essential functions of a Marketing Coordinator at Borton Lawson.  Simply put, if Plaintiff were given her desired accommodation of being able to start at work whenever she wanted (Stmt. of Undisp. Mat. Facts ¶¶ 50, 74), it would have placed Borton Lawson in the untenable position of having only one employee in the Marketing Department available to supplement the many needs of its engineers and potential clients, as well as having to guess when one of its employees would arrive for work.

### b. Plaintiff's Desired Accommodation Was Patently Unreasonable.

Additionally, even if Court were to somehow determine that her scheduled starting time was not an essential function of the job and Plaintiff did in fact communicate her desire for an accommodation, Plaintiff's proposed accommodation of an open-ended schedule was patently unreasonable and would pose an undue hardship on the operation of Borton Lawson's business.  Specifically, Plaintiff testified that she wanted to the flexibility to come into work whenever she wanted and then work (and get paid) overtime to make that time up.  (Stmt. of Undisp. Mat. Facts at ¶¶ 50, 74 82 & 83.)   The core or mandatory hours, however, for the Marketing Department were from 8:00 a.m. to 4:30 p.m.  (Stmt. of Undisp. Mat. Facts at ¶ 36.)  When asked during her deposition what time she wanted to come in to work, Plaintiff simply stated that she wanted to come in

19

"later than my start time" and "just late." (Stmt. of Undisp. Mat. Facts at ¶¶ 50, 74.) However, because Plaintiff frequently worked overtime, albeit unauthorized, when she came in later than her scheduled starting time, Borton Lawson was obligated to pay Plaintiff overtime, which, therefore, placed a substantial burden on the operation of the Company since it would impact the bottom line for the Company by "blow[ing] up" the budget of the Marketing Department.[9] (Stmt. of Mat. Undisp. Facts at ¶¶ 82, 83, 88 & 93.)

Courts addressing this issue have consistently found that open-ended schedules are unreasonable and place an undue hardship on the employer. See e.g., Jovanovic v. In-Sink-Erator Division of Emerson Elec. Co., 201 F.3d 894, 899 n. 9 (7th Cir. 2000) ("we thus reject a [open-ended] schedule as an unreasonable accommodation . . . ."); Carr, 23 F.3d at 531 ("[T]o require an employer to accept an open-ended 'work when able' schedule for a time-sensitive job would stretch ' reasonable accommodation' to absurd proportions . . . ."); Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 878 n. 8 (9th Cir. 1989) (employer's legitimate needs rendered it unreasonable to require employer to allow employee to use accrued sick leave intermittently when employee's migraine condition precluded his ability to work), cert. denied, 498 U.S. 814 (1990).

---

[9] Shortly before Ms. Fisher's arrival, Plaintiff specifically requested a change in designation from a salaried employee to an hourly employee so that she could be eligible for overtime pay. (Stmt. of Undisp. Mat. Facts at ¶ 78.)

510115.2

Therefore, because Plaintiff could not perform the essential functions of the job and her desired accommodation was patently unreasonable, summary judgment should be granted in favor of Borton Lawson.

### C. Plaintiff Was Terminated For Legitimate, Nondiscriminatory Reasons.

Assuming *arguendo* that Plaintiff could somehow establish a *prima facie* case, the burden shifts to Borton Lawson to articulate some legitimate, nondiscriminatory reason for the action under the McDonnell Douglas/Burdine analysis. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). If Borton Lawson satisfies this burden, Plaintiff may defeat a motion for summary judgment by providing evidence that would allow a fact finder reasonably to (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action. See Sarullo v. United States Postal Service, 352 F.3d 789, 800 (3d Cir. 2003). The ultimate burden of persuasion remains at all times with the plaintiff. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507, 112 S.Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993).

Here, the record shows that Plaintiff was terminated for nondiscriminatory reasons. Soon after Ms. Fisher took over as Plaintiff's supervisor, Plaintiff challenged Ms. Fisher over her decision to institute a dress code and prohibit members of the Marketing Department from wearing jeans. (Pl. Dep. at 170-72.)

The conflict between Ms. Fisher and Plaintiff became so bad that Plaintiff was sent for counseling on how to work through her personality conflict with Ms. Fisher. (Petcavage Dep. at 21.)

Despite the counseling, Plaintiff's disrespectful attitude and conflict with her supervisor did not change.  On April 28, 2003, Plaintiff received a Counseling Memorandum from Ms. Fisher, in which Ms. Fisher advised Plaintiff, inter alia, that Plaintiff needed better time management, was too confrontational and would continually work overtime without authorization in violation of Company policy. (Stmt. of Undisp. Mat. Facts at ¶¶ 87-88, 94-97.)  On October 7, 2003, Plaintiff received a Performance Evaluation from her supervisor, in which Plaintiff received the lowest grade possible in ten (10) different performance areas.   (Stmt. of Undisp. Mat. Facts at ¶ 91.)

Instead of improvement, Plaintiff's attitude and performance proceeded to get worse.  (Stmt. of Undisp. Mat. Fact at ¶ 100.)   For example, Plaintiff would repeatedly go outside of Ms. Fisher's authority and ask other persons to make decisions on Ms. Fisher's behalf when she did not agree with what Ms. Fisher decided, including asking other Managers to authorize overtime when Ms. Fisher would not authorize it, even though her repeated working unauthorized overtime put a serious strain on the Marketing Department's budget.  (Stmt. of Undisp. Mat. Facts at ¶¶ 86, 93.)   Despite being warned otherwise, Plaintiff would work

510115.2

unauthorized overtime approximately once a week, including as recent as a week before she was fired.  (Stmt. of Undisp. Mat Facts at ¶ 87.)

On October 23, 2003, Ms. Fisher sent an e-mail to Plaintiff advising her that it was her final warning regarding her performance.  (Stmt. of Undisp. Mat. Facts at ¶¶ 60, 62-63 & 101.)  In spite of Ms. Fisher's warning, Plaintiff's disrespectful attitude and conduct escalated following the e-mail to the point that Plaintiff was not saying nice things about Ms. Fisher to other employees, would not talk to Ms. Fisher even though they shared the same office, would be absent from her desk for long periods of time, and would be disrespectful in general.  (Stmt. of Undisp. Mat. Facts at ¶ 102.)  Plaintiff's attitude continued to worsen to the point where it affected Ms. Fisher's health.   (Stmt. of Undisp. Mat. Facts at ¶ 110.)   Ms. Fisher determined that "she had enough" and decided to terminate Plaintiff on October 28, 2003.  (Stmt. of Undisp. Mat. Facts at ¶¶ 2, 103.)   Under the circumstances, Borton Lawson respectfully submits that a reasonable fact finder would not disbelieve the employer's articulated legitimate reasons or believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action.  See Sarullo, 352 F.3d at 800.

Accordingly, summary judgment should be granted in favor of Borton Lawson because Plaintiff was clearly terminated for legitimate, nondiscriminatory reasons.

510115.2

**D.      Plaintiff Fails As A Matter Of Law To Establish A Claim For Intentional Infliction Of Emotional Distress.**

Plaintiff alleges a claim for intentional infliction of emotional distress against Borton Lawson in Count III of the Complaint.  Because there are no genuine issues of material fact with respect to this claim, summary judgment should be granted in Borton Lawson's favor.

First, the conduct alleged in the Complaint and facts adduced during discovery do <u>not</u> rise to the level of outrageousness required for a finding of intentional infliction of emotional distress.  To state a claim, a plaintiff must allege conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be intolerable in a civilized community."  <u>Hoy v. Angelone</u>, 720 A.2d 745, 754 (Pa. 1998).  It is "extremely rare" to find such conduct in the employment context.  <u>See</u> <u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d Cir. 1988).  Here, the record is devoid of any facts that come close to being outrageous.  <u>See</u> <u>Cox</u>, 861 F.2d at 395 ("In the context of a dismissal, it has been noted that "while loss of employment causes hardship, often severe, it is a common event' and cannot provide a basis for recovery for intentional infliction of emotional distress"); <u>Brieck v. Harbison-Walker Refractories</u>, 624 F. Supp. 363, 367 (W.D. Pa. 1985), <u>aff'd</u> <u>in</u> <u>relevant</u> <u>part</u>, 822 F.2d 52 (3d Cir. 1987).

Second, Plaintiff's claim fails because the record is devoid of any facts showing that she suffered physical injury as a consequence of the termination of employment, a necessary element in a claim for intentional infliction of emotional distress.  See Hart v. O'Malley, 436 Pa. Super. 151, 175, 647 A.2d 542, 554 (1994), aff'd on other grounds, 544 Pa. 315, 676 A.2d 222 (1996).  Thus, because Plaintiff cannot adduce any facts of bodily harm, she cannot recover for intentional infliction of emotional distress.  Id.; Fewell v. Besner, 444 Pa. Super. 559, 569, 664 A.2d 577, 582 (1995).

Third, Plaintiff is barred by the exclusivity provision in the Pennsylvania Workers' Compensation Act because the Act provides the exclusive remedy for injuries allegedly arising out of an employment relationship.  Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997) ("The exclusivity provision of [Pennsylvania's Workers' Compensation Act] bars claims for 'intentional . . . infliction of emotional distress [arising] out of [an] employment relationship.'"); Rodgers v. Prudential Ins. Co. of America, 803 F. Supp. 1024, 1030 (M.D. Pa. 1992), aff'd without opinion, 998 F.2d 1004 (3d Cir. 1993) (same).

And finally, Plaintiff's claim for intentional infliction of emotional distress is preempted by the PHRA.  The law is clear that common law claims of intentional infliction of emotional distress that are based upon the same allegations of discrimination, and are not examples of egregious and outrageous conduct, are

510115.2

preempted by the PHRA.  See Belverena v. Central Parking System, Inc., Civil A.

No. 05-4364, 2005 WL 2850343, at *2 (E.D. Pa. Oct. 31, 2005) (A copy of the

Belverena decision is attached hereto as Exhibit "B.")

For each of the above reasons, Plaintiff fails, as a matter of law, to state a

claim for intentional infliction of emotional distress against Borton Lawson.

Therefore, summary judgment should be granted in Borton Lawson's favor on

Plaintiff's intentional infliction of emotional distress claim.

## IV.    CONCLUSION

For the reasons set forth above, Defendant, Borton Lawson Engineering,

Inc., respectfully requests that its Motion for Summary Judgment be granted.

RESPECTFULLY SUBMITTED:

ROSENN, JENKINS & GREENWALD, LLP

BY:  /s/JAMES C. OSCHAL, ESQUIRE
     JAMES C. OSCHAL, ESQUIRE
     I.D. No. PA 53846
     THOMAS J. CAMPENNI, Esquire
     I.D. No. PA 87809
     15 South Franklin Street
     Wilkes-Barre, PA 18711-0075

     Attorneys for Defendant,
     BORTON LAWSON ENGINEERING, INC.

510115.2