IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON SCHMID, | : | |
| | : | No. 3:05-CV-1660 |
| Plaintiff, | : | |
| v. | : | |
| | : | Honorable William J. Nealon |
| BORTON-LAWSON ENGINEERING, | : | Hon. Thomas M. Blewitt |
| INC., CHRISTOPHER BORTON, | : | |
| THOMAS LAWSON, MARY ELLEN | : | JURY TRIAL DEMANDED |
| PETCAVAGE, MELISSA FISHER, | : | |
| BETH ANN DELANEY, and | : | |
| CORPORATE COUNSELING AND | : | |
| TRAINING SERVICES, INC., | : | |
| | : | |
| Defendants. | : | *FILED ELECTRONICALLY* |

**REPLY BRIEF OF DEFENDANT BETH ANN DELANEY IN FURTHER SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

Defendant Beth Ann Delaney, by and through her undersigned counsel, Marshall, Dennehey, Warner, Coleman & Goggin, respectfully submits this Reply Brief pursuant to Local Rule 7.7 in response to Plaintiff's opposition and in further

1

support of her Motion for Summary Judgment.

### A.   LEGAL ARGUMENT.

#### 1.   Plaintiff's invasion of privacy, breach of fiduciary duty/ confidential relationship, negligence and negligence *per se* claims against Defendant Delaney are time barred.

Plaintiff, not surprisingly, takes the position that the Court's prior Memorandum and Order dated October 26, 2006, which in part granted Plaintiff leave to join Delaney as an additional Defendant, was correct and should stand. See Plaintiff's Brief in Opposition (DOC 127), p. 3.  For the reasons more fully set forth in Defendant's moving brief, however, it remains Delaney's position that the factual assumptions and reasoning adopted by the Court in its decision to allow Plaintiff leave to amend, well after the applicable statutes of limitation had run, is simply not supportable by the facts as they ultimately were developed through discovery.

Plaintiff, in the alternative, also argues that she is entitled to the benefit of the "discovery rule," inasmuch as she supposedly did not learn of the existence of Delaney's October 27, 2003 email until it was disclosed to her by BLE in Spring 2006.  See DOC 127, p. 5.[1]  Even if the Court accepts Plaintiff's contention as true, the date on which Plaintiff actually learned of the email is simply of no moment and amounts to no more than the proverbial "red herring."

---

[1] One is left to wonder why Plaintiff waited until July 17, 2006 to file a Motion to amend her Complaint to join Delaney as a Defendant (DOC 20) if she learned about the email in the Spring of 2006.

Plaintiff, armed with the knowledge of the existence of Delaney's October 27, 2003 email, conducted the deposition of Mary Ellen Petcavage on May 24, 2006. During her deposition, Petcavage clearly and unequivocally testified that Delaney's email played no role in the decision to terminate Plaintiff's employment:

> *Q: Did that e-mail have any bearing on the decision to fire Sharon?*
>
> *A: No, not at all.*

<u>See</u> Transcript of Mary Ellen Petcavage Deposition Testimony (Exhibit C to Delaney's Motion for Summary Judgment, DOC 121), 55:5-7 (emphasis supplied). Despite knowing that Delaney's email did not cause her termination, Plaintiff nonetheless elected to join Delaney as an additional Defendant, several months after conducting Petcavage's deposition, and well after the applicable statutes of limitation had run.

Without question, if Plaintiff had never learned about Delaney's email, she would have continued to operate under the misguided belief that she was terminated because of her supposed disability, rather than her employer's stated reasons, i.e., that Plaintiff simply did not follow company procedures. Plaintiff's decision to pursue claims against Delaney, which, of course, have <u>nothing</u> to do with her supposed disability, was merely an afterthought. Plaintiff is not entitled to the benefit of the "discovery rule" because Plaintiff knew, by virtue of Petcavage's testimony under oath, that Delaney's email had no bearing on the decision to

3

terminate her employment. Because Plaintiff had no factual basis upon which to join Delaney, there were and are no viable claims against Delaney to "discover." Accordingly, Plaintiff's invasion of privacy, breach of fiduciary duty, negligence and negligence *per se* claims are time barred as a matter of law.

### 2. Plaintiff has failed to proffer sufficient facts to support her invasion of privacy claim.

Plaintiff argues that she has established a *prima facie* claim for invasion of privacy because Delaney disclosed confidential information to Plaintiff's employer, which in turn "cost Ms. Schmid her job and her livelihood." See DOC 127, p. 7. Of course, Plaintiff has produced absolutely no evidence to contradict the irrefutable fact that Plaintiff was <u>not</u> terminated from her employment with BLE because of Delaney's email.

As noted above, Petcavage unequivocally testified during her deposition that Delaney's email did ***"not at all"*** have any bearing on the decision to terminate Plaintiff's employment. Melissa Fisher, Plaintiff's supervisor, also testified during her own deposition that Petcavage did not forward Delaney's email to her, nor did Petcavage discuss the email with her. Further, Fisher, Christopher Borton and Thomas Lawson all confirmed in <u>verified</u> responses to Plaintiff's Request for Admissions that they were not aware of Delaney's email, either on or before October 28, 2003, the date on which Plaintiff was terminated. In addition, the BLE Defendants, in <u>verified</u> answers to Interrogatories, confirmed that Plaintiff's

4

termination was not the result, in whole or in part, of Delaney's email.

Most significantly, Plaintiff acknowledged during her own deposition that she is not aware of any specific facts to contradict BLE's position in this regard. Though Plaintiff argues that the "temporal proximity between the email and plaintiff's termination is... unusually suggestive," see DOC 127, p. 9, Plaintiff's mere suspicion alone is not sufficient to override the insurmountable truth that her termination was not the result of any conduct by Delaney. See Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F. 3d 238, 252 (3rd Cir. 1999) (mere speculation alone is insufficient to overcome summary judgment). Plaintiff's invasion of privacy claim thus fails as a matter of law.

### 3. Plaintiff's negligence *per se* claim cannot be maintained as a matter of law.

Plaintiff argues, without citation to any specific legal authority, that the Mental Health Procedures Act applies to Delaney in her capacity as a licensed social worker.[2] This is, of course, despite the fact that the Act plainly applies only to "facilities" that include "any mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients." 50 Pa.

---

[2] Plaintiff's negligence *per se* claim is premised not only upon the Mental Health Procedures Act and its implementing regulations, but also the Code of Ethics of the State Board of Psychology, 49 Pa. Code §41.61. In light of the arguments raised by Plaintiff in her brief in opposition, however, which do not address the Code of Ethics in any respect, it appears Plaintiff concedes that the Code of Ethics does not apply to Delaney.

C.S. §7103.  Clearly, a licensed social worker does <u>not</u> fall within the definition of "facility" under the Act, and Plaintiff points to no case law in which any Court of this Commonwealth construed the Act to include licensed social workers among the "facilities" subject thereto.  Plaintiff's negligence *per se* claim fails as a matter of law.

**4.    Plaintiff's lost wages claim against Delaney cannot survive because Plaintiff was not terminated from her employment because of Delaney's email.**

As discussed at length above and in Delaney's moving Brief, the uncontroverted facts of record clearly establish that Plaintiff was not terminated from her employment because of Delaney's October 27, 2003 email, and Plaintiff candidly acknowledged during her deposition that she is unaware of any specific facts to the contrary.  Rather, Plaintiff simply argues that it is "unusually suggestive" that Delaney's email was sent one day before BLE terminated her employment on October 28, 2003.  The timing of Delaney's email is of no moment, however, inasmuch as Petcavage confirmed during her deposition that she did not share the email with Fisher, Borton, or Lawson, either on or before October 28, 2003, and Fisher, Borton and Lawson all confirmed they were not aware of the email either on or before that date.

Plaintiff also argues that a jury "could easily conclude" that the sworn statements of Petcavage, Fisher, Borton and Lawson "lack[] credibility," and that

6

BLE's unequivocal position that Delaney's email was not a basis for Plaintiff's termination "is simply not believable."  See DOC 127, p. 10.  In support of that suggestion, Plaintiff cites to a fragment of Petcavage's deposition testimony and claims "that she 'might have' discussed the October 27, 2003 e-mail from Delaney with Defendants Borton and Lawson, the principals of BLE."  See id.  Significantly, however, Plaintiff chose not to recite the full extent of Petcavage's deposition testimony in this regard, wherein she completely stated as follows:

> Q: Did you discuss this – I guess I shouldn't assume.  The last sentence says, please discuss with Chris/ Tom.  Does that mean Chris – does that mean Mr. Lawson and Mr. Borton?
>
> A: Right.
>
> Q: Did you discuss this with them?
>
> A: This particular email?  I might have – *the only thing I might have suggested was do you think we should go for counseling, do you think it's* – [CONFIDENTIAL PORTION BEGINS].

See Transcript of Mary Ellen Petcavage Deposition Testimony (Exhibit C to Delaney's Motion for Summary Judgment, DOC 121), 45:15-25 (emphasis supplied).  Thus, Plaintiff conveniently fails to apprise the Court that even though Petcavage testified she might have shared the email with Borton and Lawson, it was for the limited purpose of evaluating whether counseling should be considered.  More significantly, Plaintiff apparently overlooked an important piece of Petcavage's deposition testimony, some ten pages later, wherein she confirmed that Delaney's email did ***"not at all"*** have any bearing on the decision to terminate

7

Plaintiff's employment. Although Plaintiff's attempts to use deposition testimony to support her claims appear laudable, she simply cannot surmount the overwhelming evidence and the inescapable conclusion that she was not terminated because of Delaney's email.

### 5. **Plaintiff has failed to produce sufficient evidence to support her alleged emotional distress damages.**

Plaintiff testified during her deposition on September 24, 2007 that with regard to any relationships she has with medical and mental health providers, Plaintiff does not "feel any of my relationships were necessarily impaired" as a result of Delaney's alleged conduct. Plaintiff also testified she cannot say that she no longer trusts social workers. Plaintiff further testified she has not refused to take medical advice because of a lack of trust in a particular health care provider, and in fact Plaintiff confirmed that she does not "refuse to take anybody's medical advice." Plaintiff additionally testified that she cannot specifically recall reporting to any treating physician in particular that she was suffering from shock, anxiety, mental anguish, humiliation, or loss of self-esteem.

Furthermore, in her answers to Defendant Delaney's interrogatories, Plaintiff confirmed she has not received medical treatment specific to her claim of the impairment of her relationships with and her ability to trust mental health practitioners; or to her claim of her fear that information she discloses in confidence will be disclosed to others; or to her claim of her loss and/ or

impairment of the ability to trust mental health practitioners; or to her claim of the impairment of her ability to engage in meaningful treatment for her mental illness. Plaintiff also testified during her deposition that she has not received medical treatment specific to her claim of the loss of the ability to provide herself with the rewards of her chosen career.

Despite this overwhelming evidence to the contrary (<u>all</u> of which was developed as the result of questions posed directly to Plaintiff), Plaintiff nonetheless argues that "significant questions of fact remain in this case, and summary judgment is inappropriate" with regard to Plaintiff's emotional distress damages claim. <u>See</u> DOC 127, p. 13. In a disturbing attempt to create a dispute of fact in order to avert summary judgment, Plaintiff submitted for the Court's consideration in response to Delaney's Motion a self-serving "Declaration" dated February 1, 2008 which, in pertinent part, completely contradicts her own sworn testimony as noted above. Specifically, Plaintiff states in her "Declaration," which she admittedly submits "under penalty of perjury," the following:

> Since learning of Beth Ann Delaney's breach of confidentiality, I have had difficulty engaging in counseling related to my depression because I have been unable to trust any potential therapist. For several months, I did not engage in counseling at all. I have recently re-entered counseling, and recent counseling sessions have focused on the lack of trust that Beth Ann Delaney's actions caused.

Plaintiff's Declaration clearly amounts to no more than a "sham affidavit" which this Court should disregard entirely. In <u>Jiminez v. All American</u>

Rathskeller, Inc., 503 F. 3d 247, 251 (3rd Cir. 2007), the Third Circuit reiterated the long-standing "sham affidavit" doctrine which provides that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."  (citing Baer v. Chase, 392 F. 3d 609, 624 (3rd Cir. 2004)).  The Circuit court further explained:

> A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment.  A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant... Therefore, if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord the affidavit evidentiary weight and that summary judgment is appropriate.

Jiminez, 503 F. 3d at 253.

Of course, the "main practical reason supporting the sham affidavit doctrine is that prior depositions are more reliable than affidavits."  Jiminez, 503 F. 3d at 253.  "The deposition of a witness will usually be more reliable than his affidavit, since the deponent was either cross-examined by opposing counsel, or at least available to opposing counsel for cross-examination."  Ibid. (other citations omitted).  "Affidavits, on the other hand, are usually drafted by counsel, whose familiarity with summary judgment procedure may render an affidavit less credible."  Ibid.  Accordingly, "[w]hen a party does not explain the contradiction

10

between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a 'sham,' therefore not creating an impediment to a grant of summary judgment based on the deposition." Id. at 254.

Here, Plaintiff offers absolutely no explanation, let alone a plausible explanation, as to why her "Declaration" so starkly contradicts her prior deposition testimony (as well as answers to interrogatories) given just a few short months ago. The reason, however, is obvious – Plaintiff is attempting to create a "genuine" dispute of fact in order to avoid the entry of summary judgment against her. Plaintiff acknowledges as much wherein she argues that "significant questions of fact remain in this case, and summary judgment is inappropriate." This simply is not true. The only competent evidence before the Court, which is derived directly from Plaintiff's prior deposition testimony and her answers to interrogatories, and not from Plaintiff's subsequent "sham affidavit," clearly establishes that Plaintiff cannot substantiate her emotional distress damages claims against Delaney.[3]

### B.   CONCLUSION.

For the foregoing reasons, and for the reasons more fully set forth in her Motion and supporting brief, Defendant Beth Ann Delaney respectfully requests that this Honorable Court grant her Motion for Summary Judgment.

---

[3] Defendant reserves the right to seek sanctions against Plaintiff pursuant to Fed. R. Civ. P. 56(g) if the Court determines Plaintiff's "Declaration" was submitted "in bad faith or solely for delay."

### C. WORD COUNT CERTIFICATION.

The undersigned counsel for Defendant Beth Ann Delaney hereby certifies that Defendant's Reply Brief does not exceed 5,000 words, and in submitting this certification, counsel has relied upon the word count feature of the word processing system used to prepare the Reply Brief. According to the word processing system used to prepare the Reply Brief, the actual number of words in the Reply Brief is 2,751.

                                      Respectfully Submitted,

                                      **MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

DATE: February 11, 2008    BY:   *s/ Sharon M. O'Donnell, Esquire*
                                                      Sharon M. O'Donnell, Esquire
                                                      I.D. No. 79457
                                                      Christopher J. Conrad, Esquire
                                                      I.D. No. 202348
                                                      4200 Crums Mill Road, Suite B
                                                      Harrisburg, PA 17112
                                                      (717) 651-3503
                                                      smodonnell@mdwcg.com
                                                      *Attorneys for the Defendant Beth Ann Delaney*
                                                      05/376247.v1

## CERTIFICATE OF SERVICE

I, Christopher J. Conrad, Esquire, of Marshall, Dennehey, Warner, Coleman & Goggin, do hereby certify that on the 11th day of February 2008, I served a copy of the **Reply Brief in Further Support of Motion for Summary Judgment** via the Court's ECF system as follows:

| | |
|---|---|
| George R. Barron, Esquire<br>Gettysburg House<br>88 North Franklin Street<br>Wilkes-Barre, PA  18701<br>  *Attorney for Plaintiff* | James C. Oschal, Esquire<br>Thomas J. Campenni, Esquire<br>Rosenn, Jenkins & Greenwald, LLP<br>15 South Franklin Street<br>Wilkes-Barre, PA  18711<br>   *Attorney for Borton-Lawson*<br>   *Engineering, Inc., Christopher*<br>   *Borton, Thomas Lawson, Mary Ellen*<br>   *Petcavage and Melissa D. Fisher* |
| Anne B. Cianflone, Esquire<br>Hinman, Howard & Kattell, LLP<br>321 Spruce Street, Suite 705<br>Scranton, PA  18503<br>*Attorney for Defendant CCTS, Inc.* | |

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

BY:  *s/ Christopher J. Conrad, Esquire*
     Christopher J. Conrad, Esquire
     I.D. No. 202348
     4200 Crums Mill Road, Suite B
     Harrisburg, PA  17112
     (717) 651-3501
     cjconrad@mdwcg.com
     *Attorneys for the Defendants*
     *Beth Ann Delaney*